# EXHIBIT A

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

RONNY EASTRIDGE; ROBERT                    *
WARREN; CASTAWAYS, LLC; ERIN
McCLENDON; ARTHUR McCLENDON;               *
RONALD WATERS; PAUL SHUTT;
ALFRED WILHITE, JR.; TRAVIS                *
STRINGFELLOW; HENRY COTTON,
JR.; RANDALL CLARK; STEVE                  *
GRAHAM; ERNEST HARRIS; LARRY
SEAMAN; WILLIAM VEREEN; KEVIN              *
BEEBOUT; RICK COTTON; JOHN
ADAMS; APALACHEE GIRL, INC.;               *
THEO ATKINSON; JASON BAUGH;
WILLIAM BAUGH; KENDALL                     *
BOZEMAN; CHRIS BRYANT; KIM
BRYANT; NORWOOD BRYANT;                    *
GEORGE CLARK; MICHELLE CLARK;
KEITH CLARKE; WILLIAM LESLIE               *
CLARKE; NICHOLAS COLLIER;
PHELAND COLLIER; FRANK CONLEY;             *
RONALD DISMUKE; RALPH FOSTER;
PATRICIA HAMANN; JOHN L.                   *
HOWARD; WINFORD HUTCHERSON,
JR.; WINFORD HUTCHERSON, SR.;              *
GARY JOHNSON; JOSHUA LOCKE;
DONALD McDONALD; CHARLES                   *
DRUMMOND, JR.; STARLITE-USA,
INC.; M S & R, LLC; TRIEU NGOC             *
NGUYEN; GLENNA CHERYL ODOM;
JAMES PAAR; PAAR MEDIA GROUP,              *
INC.; CHAD PETERSON; DAVID
POLLOCK; PAT RANKIN; DARRELL               *
ROBERTS; CHERYL ROBERTS;
ROUGH WATER SEAFOOD, LLC;                  *
RITCHIE RUSSELL; LINDA RUSSELL;
SHAWN RYAN; DARREN SEAMAN;                 *
ROBERT SEAMAN; STEVEN SHUTT;
DARRIN SIMMONS; JOHN SIMMONS;              *
JONATHAN RANDALL TOWNSEND;
DON TRIGG; ROBERT WALKER; LEE              *
WILBURN; DALE WOODRUFF; R & D

-1-

CHARTERS, INC.; GLENN YOUNG;　　＊
YOUNG ENTERPRISES, INC.;

　　　　　　　　　　　　　　　　＊

vs.　　　　　　　　　　　　　　　＊　　CIVIL ACTION NO. $CV$-2011-1102.00

　　　　　　　　　　　　　　　　＊　　PLAINTIFFS DEMAND TRIAL BY JURY

BP AMERICA PRODUCTION
COMPANY; PARSONS CORPORATION;　＊
DANOS & CUROLE STAFFING, L.L.C.;
JASON ZIGLAR; DENNIS BERG;　　　＊
DANNY BLACK; MICHAEL ALLEN;
MICHAEL ENGLISH; BRANDY　　　　＊
BUXTON; JUSTIN NASH; ED
THOMPSON; JOSEPH LOBO; PHIL　　　＊
PAYNE; DEVON DOE; MICHAEL EPPS;
TRUDY ROE; JEFF JOHNSON; DARRYL　＊
GONZALES; LEIGH A. "LIA" BARNES;
MARSHA DAVIDSON; CHARLOTTE　　　＊
THOMPSON; DONALD L. "SCOOTER"
FREDRICKSON, II; and FICTITIOUS　　　＊
DEFENDANTS 1-100, who are those
individuals, general partnerships, limited　＊
partnerships, corporations or other legal
entities that made false, misleading or　＊
fraudulent representations to the Plaintiffs
that (a) VOO participants would be paid for　＊
standby time; (b) VOO participants would
be fully reimbursed for damage to their　　＊
vessels that occurred while the vessels were
in the VOO program; (c) VOO participants　＊
would be reimbursed for costs and expenses
incurred as a result of the VOO program;　＊
(d) VOO participants' vessels would be
decontaminated at BP's expense at the　　＊
conclusion of the VOO program; and (e)
the income that VOO participants received　＊
through the VOO program would not offset
the claims that VOO participants had　　　＊
against BP as a result of the *Deepwater
Horizon* oil spill and/or those individuals,　＊
general partnerships, limited partnerships,
corporations or other legal entities that　　＊
concealed from the Plaintiffs that (a) VOO
participants would not be paid for standby　＊

　　　　　　　　　　　　　　　　-2-

time; (b) VOO participants would not be     *
fully reimbursed for damage to their vessels
that occurred while the vessels were in the     *
VOO program; (c) VOO participants would
not be reimbursed for costs and expenses     *
incurred as a result of the VOO program;
(d) VOO participants' vessels would not be     *
decontaminated at BP's expense at the
conclusion of the VOO program; and (e)     *
the income that VOO participants received
through the VOO program would offset the     *
claims that VOO participants had against
BP as a result of the *Deepwater Horizon* oil     *
spill,

                                 *

         Defendants.                *

## COMPLAINT

Plaintiffs Ronny Eastridge; Robert Warren; Castaways, LLC; Erin McClendon; Arthur

McClendon; Ronald Waters; Paul Shutt; Alfred Wilhite, Jr.; Travis Stringfellow; Henry Cotton, Jr.;

Randall Clark; Steve Graham; Ernest Harris; Larry Seaman; William Vereen; Kevin Beebout; Rick

Cotton; John Adams; Apalachee Girl, Inc.; Theo Atkinson; Jason Baugh; William Baugh; Kendall

Bozeman; Chris Bryant; Kim Bryant; Norwood Bryant; George Clark; Michelle Clark; Keith Clarke;

William Leslie Clarke; Nicholas Collier; Pheland Collier; Frank Conley; Ronald Dismuke; Ralph

Foster; Patricia Hamann; John L. Howard; Winford Hutcherson, Jr.; Winford Hutcherson, Sr.; Gary

Johnson; Joshua Locke; Donald McDonald; Charles Drummond, Jr.; Starlite-USA, Inc.; M S & R,

LLC; Trieu Ngoc Nguyen; Glenna Cheryl Odom; James Paar; Paar Media Group, Inc.; Chad

Peterson; David Pollock; Pat Rankin; Darrell Roberts; Cheryl Roberts; Rough Water Seafood, LLC;

Ritchie Russell; Linda Russell; Shawn Ryan; Darren Seaman; Robert Seaman; Steven Shutt; Darrin

Simmons; John Simmons; Jonathan Randall Townsend; Don Trigg; Robert Walker; Lee Wilburn;

Dale Woodruff; R & D Charters, Inc.; Glenn Young; and Young Enterprises, Inc. submit the

following as their Complaint against BP America Production Company, Parsons Corporation, Danos

& Curole Staffing, L.L.C., Jason Ziglar, Dennis Berg, Danny Black, Michael Allen, Michael English,

Brandy Buxton, Justin Nash, Ed Thompson, Joseph Lobo, Phil Payne, Devon Doe, Michael Epps,

Trudy Roe, Jeff Johnson, Darryl Gonzales, Leigh A. "Lia" Barnes, Marsha Davidson, Charlotte

Thompson, Donald L. "Scooter" Fredrickson, II and Fictitious Defendants 1-100 as follows:

## I.   PARTIES

### A.   *The Plaintiffs*

1.      The Plaintiffs all participated in BP America Production Company's Vessels of

Opportunity program.  Each of the Plaintiffs entered into a Master Vessel Charter Agreement with

BP America Production Company.  The Plaintiffs consist of the following persons and entities:

      a.      Ronny Eastridge, who is a resident citizen of Mobile County, Alabama and
is over the age of 19.

      b.      Robert Warren, who is a resident citizen of Baldwin County, Alabama and
is over the age of 19.

      c.      Castaways, LLC, which is an Alabama limited liability company.  All of its
members are resident citizens of Alabama.

      d.      Erin McClendon, who is a resident citizen of Ocean Springs, Mississippi and
is over the age of 19.

e.    Arthur McClendon, who is a resident citizen of Ocean Springs, Mississippi
      and is over the age of 19.

f.    Ronald Waters, who is a resident citizen of Mobile County, Alabama and is
      over the age of 19.

g.    Paul Shutt, who is a resident citizen of Baldwin County, Alabama and is over
      the age of 19.

h.    Alfred Wilhite, Jr., who is a resident citizen of Baldwin County, Alabama and
      is over the age of 19.

i.    Travis Stringfellow, who is a resident citizen of Mobile County, Alabama and
      is over the age of 19.

j.    Henry Cotton, Jr., who is a resident citizen of Washington County, Alabama
      and is over the age of 19.

k.    Randall Clark, who is a resident citizen of Mobile County, Alabama and is
      over the age of 19.

l.    Steve Graham, who is a resident citizen of Mobile County, Alabama and is
      over the age of 19.

m.    Ernest Harris, who is a resident citizen of Mobile County, Alabama and is
      over the age of 19.

n.    Larry Seaman, who is a resident citizen of Mobile County, Alabama and is
      over the age of 19.

o.    William Vereen, who is a resident citizen of Baldwin County, Alabama and
      is over the age of 19.

p.   Kevin Beebout, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

q.   Rick Cotton, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

r.   John Adams, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

s.   Apalachee Girl, Inc., which is an Alabama corporation with its principal place of business in Alabama.

t.   Theo Atkinson, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

u.   Jason Baugh, who is a resident citizen of Gulfport, Mississippi and is over the age of 19.

v.   William Baugh, who is a resident citizen of Pass Christian, Mississippi and is over the age of 19.

w.   Kendall Bozeman, who is a resident citizen of Butler County, Alabama and is over the age of 19.

x.   Chris Bryant, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

y.   Kim Bryant, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

z.   Norwood Bryant, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

aa. George Clark, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

bb. Michelle Clark, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

cc. Keith Clarke, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

dd. William Leslie Clarke, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

ee. Nicholas Collier, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

ff. Pheland Collier, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

gg. Frank Conley, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

hh. Ronald Dismuke, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

ii. Ralph Foster, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

jj. Patricia Hamann, who is a resident citizen of Ocean Springs, Mississippi and is over the age of 19.

kk. John L. Howard, who is a resident citizen of Conyers, Georgia and is over the age of 19.

ll.    Winford Hutcherson, Jr., who is a resident citizen of Ocean Springs, Mississippi and is over the age of 19.

mm.    Winford Hutcherson, Sr., who is a resident citizen of Biloxi, Mississippi and is over the age of 19.

nn.    Gary Johnson, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

oo.    Joshua Locke, who is a resident citizen of Biloxi, Mississippi and is over the age of 19.

pp.    Donald McDonald, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

qq.    Charles Drummond, Jr., who is a resident citizen of Mobile County, Alabama and is over the age of 19.

rr.    Starlite-USA, Inc., which is an Alabama corporation with its principal place of business in Alabama.

ss.    M S & R, LLC, which is an Alabama limited liability company. All of its members are resident citizens of Alabama.

tt.    Trieu Ngoc Nguyen, who is a resident citizen of Pascagoula, Mississippi and is over the age of 19.

uu.    Glenna Cheryl Odom, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

vv.    James Paar, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

-8-

ww.   Paar Media Group, Inc., which is an Alabama corporation with its principal place of business in Alabama.

xx.   Chad Peterson, who is a resident citizen of Biloxi, Mississippi and is over the age of 19.

yy.   David Pollock, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

zz.   Pat Rankin, who is a resident citizen of Tallahassee, Florida Alabama and is over the age of 19.

aaa.   Darrell Roberts, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

bbb.   Cheryl Roberts, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

ccc.   Rough Water Seafood, LLC, which is an Alabama limited liability company. All of its members are resident citizens of Alabama.

ddd.   Ritchie Russell, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

eee.   Linda Russell, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

fff.   Shawn Ryan, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

ggg.   Darren Seaman, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

hhh.   Robert Seaman, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

iii.   Steven Shutt, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

jjj.   Darrin Simmons, who is a resident citizen of I'berville, Mississippi and is over the age of 19.

kkk.   John Simmons, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

lll.   Jonathan Randall Townsend, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

mmm. Don Trigg, who is a resident citizen of Gautier, Mississippi and is over the age of 19.

nnn.   Robert Walker, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

ooo.   Lee Wilburn, who is a resident citizen of Pensacola, Florida and is over the age of 19.

ppp.   Dale Woodruff, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

qqq.   R & D Charters, Inc., which is an Alabama corporation with its principal place of business in Alabama.

rrr.   Glenn Young, who is a resident citizen of Ocean Springs, Mississippi and is over the age of 19.

sss.   Young Enterprises, Inc., which is Mississippi corporation with its principal place of business in Mississippi.

## B.   *The Corporate Defendants*

2.     BP America Production Company is a Delaware corporation with its principal place of business in the State of Texas.  BP America Production Company was a party to each of the Master Vessel Charter Agreements signed by the Plaintiffs.

3.     Parsons Corporation is a Delaware corporation with its principal place of business in California. BP America Production Company contracted with Parsons Corporation to operate and manage the Vessels of Opportunity program.

4.     Danos & Curole Staffing, L.L.C is a Louisiana limited liability company.  BP America Production Company contracted with Danos & Curole Staffing, LLC to provide accounting and payment services for the Vessels of Opportunity program.

## C.   *The Individual Defendants*

5.     Jason Ziglar is a resident citizen of Mobile County, Alabama.  At all times relevant to this complaint, Jason Ziglar was employed by and/or an agent of BP America Production Company.  Jason Ziglar managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program.  At all times relevant to this complaint, Jason Ziglar was based in and operated out of Mobile County, Alabama.

6.     Dennis Berg is a resident citizen of Mobile County, Alabama.  At all times relevant to this complaint, Dennis Berg was employed by and/or an agent of Parsons Corporation.  Dennis

-11-

Berg managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Dennis Berg was based in and operated out of Mobile County, Alabama.

7.      Danny Black is a resident citizen of Mobile County, Alabama. At all times relevant to this complaint, Danny Black was employed by and/or an agent of Parsons Corporation. Danny Black managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Danny Black was based in and operated out of Mobile County, Alabama.

8.      Michael Allen is a resident citizen of Mobile County, Alabama. At all times relevant to this complaint, Michael Allen was employed by and/or an agent of Parsons Corporation. Michael Allen managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Michael Allen was based in and operated out of Mobile County, Alabama.

9.      Michael English is a resident citizen of Mobile County, Alabama. At all times relevant to this complaint, Michael English was employed by and/or an agent of Parsons Corporation. Michael English managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Michael English was based in and operated out of Mobile County, Alabama.

10.     Brandy Buxton is a resident citizen of Mobile County, Alabama. At all times relevant to this complaint, Brandy Buxton was employed by and/or an agent of BP. Brandy Buxton participated in accounting and payment services for BP America Production Company's Vessels of

Opportunity program. At all times relevant to this complaint, Brandy Buxton was based in and operated out of Mobile County, Alabama.

11.     Justin Nash is a resident citizen of Anchorage, Alaska. At all times relevant to this complaint, Justin Nash was employed by and/or an agent of BP America Production Company. Justin Nash managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Justin Nash was based in and operated out of Mobile County, Alabama.

12.     Ed Thompson is a resident citizen of Alaska. At all times relevant to this complaint, Ed Thompson was employed by and/or an agent of Parsons Corporation. Ed Thompson managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Ed Thompson was based in and operated out of Mobile County, Alabama.

13.     Joseph Lobo is a resident citizen of Texas. At all times relevant to this complaint, Joseph Lobo was employed by and/or an agent of BP America Production. Joseph Lobo managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Joseph Lobo was based in and operated out of Mobile County, Alabama.

14.     Phil Payne is a resident citizen of Mississippi. At all times relevant to this complaint, Phil Payne was employed by and/or an agent of Parsons Corporation. Phil Payne managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Phil Payne was based in and operated out of Mobile County, Alabama.

-13-

15.     Devon Doe's resident citizenship is unknown. At all times relevant to this complaint, Devon Doe was employed by and/or an agent of Parsons Corporation. Devon Doe managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Devon Doe was based in and operated out of Mobile County, Alabama.

16.     Michael Epps' resident citizenship is unknown. At all times relevant to this complaint, Michael Epps was employed by and/or an agent of Parsons Corporation. Michael Epps managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Michael Epps was based in and operated out of Mobile County, Alabama.

17.     Trudy Roe's resident citizenship is unknown. At all times relevant to this complaint, Trudy Roe was employed by and/or an agent of Danos & Curole Staffing, L.L.C. Trudy Roe participated in accounting and payment services for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Trudy Roe was based in and operated out of Mobile County, Alabama.

18.     Jeff Johnson is a resident citizen of Anchorage, Alaska. At all times relevant to this complaint, Jeff Johnson was employed by and/or an agent of BP America Production Company. Jeff Johnson managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Jeff Johnson was based in and operated out of Mobile County, Alabama.

19.     Darryl Gonzales' resident citizenship is unknown. At all times relevant to this complaint, Darryl Gonzales was employed by and/or an agent of BP America Production Company.

-14-

Darryl Gonzales managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Darryl Gonzales was based in and operated out of Mobile County, Alabama.

20.     Leigh A. "Lia" Barnes is a resident citizen of Mobile County, Alabama. At all times relevant to this complaint, Lia Barnes was employed by and/or an agent of Parsons Corporation. Lia Barnes managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Lia Barnes was based in and operated out of Mobile County, Alabama.

21.     Marsha Davidson is a resident citizen of Mobile County, Alabama. At all times relevant to this complaint, Marsha Davidson was employed by and/or an agent of Parsons Corporation. Lia Barnes managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Lia Barnes was based in and operated out of Mobile County, Alabama.

22.     Charlotte Thompson is a resident citizen of Texas. At all times relevant to this complaint, Charlotte Thompson was employed by and/or an agent of BP America Production Company. Charlotte Thompson managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Charlotte Thompson was based in and operated out of Mobile County, Alabama.

23.     Donald L. "Scooter" Fredrickson, II  is a resident citizen of Baldwin County, Alabama. At all times relevant to this complaint, Donald Fredrickson was employed by and/or an agent of Parsons Corporation. Donald Fredrickson managed, operated and solicited vessels for BP

-15-

America Production Company's Vessels of Opportunity program. At all times relevant to this complaint, Donald Fredrickson was based in and operated out of Mobile County, Alabama.

### D.    *The Fictitious Defendants*

24.    Fictitious Defendants 1-50 are those individuals, general partnerships, limited partnerships, corporations or other legal entities that made false, misleading or fraudulent representations to the Plaintiffs that (a) Vessels of Opportunity ("VOO") participants would be paid for standby time; (b) VOO participants would be fully reimbursed for damage to their vessels that occurred while the vessels were in the VOO program; (c) VOO participants would be reimbursed for costs and expenses incurred as a result of the VOO program; (d) VOO participants' vessels would be decontaminated at BP's expense at the conclusion of the VOO program; and (e) the income that VOO participants received through the VOO program would not offset the claims that VOO participants had against BP as a result of the Deepwater Horizon oil spill.

25.    Fictitious Defendants 51-100 are those individuals, general partnerships, limited partnerships, corporations or other legal entities that concealed from the Plaintiffs that (a) VOO participants would not be paid for standby time; (b) VOO participants would not be fully reimbursed for damage to their vessels that occurred while the vessels were in the VOO program; (c) VOO participants would not be reimbursed for costs and expenses incurred as a result of the VOO program; (d) VOO participants' vessels would not be decontaminated at BP's expense at the conclusion of the VOO program; and (e) the income that VOO participants received through the VOO program would offset the claims that VOO participants had against BP as a result of the Deepwater Horizon oil spill.

## II.    JURISDICTION AND VENUE

26.    The amount in controversy in this case exceeds $10,000.  Thus, pursuant to § 12-11-30 of the Alabama Code, this matter falls within the exclusive jurisdiction of this Court.

27.    Pursuant to § 6-3-2 of the Alabama Code and Rule 82 of the Alabama Rules of Civil Procedure, venue is proper in this Court with respect to the Individual Defendants because (a) some of the Individual Defendants live in Mobile County, Alabama; (b) most of the acts or omissions complained of by the Plaintiffs occurred in Mobile County, Alabama; and (c) many of the acts on which the Plaintiffs' claims are founded were performed in Mobile County, Alabama.

28.    Pursuant to § 6-3-7 of the Alabama Code, venue is proper in this Court with respect to the Corporate Defendants because (a) a substantial part of the events and/or omissions giving rise to Plaintiffs' claims occurred in Mobile County, Alabama; (b) some or all of the Defendants' principal offices in this state are located in Mobile County, Alabama; (c) many of the Plaintiffs reside in Mobile County, Alabama and/or have their principal office in Mobile County, Alabama; (d) all of the Corporate Defendants were doing business in Mobile County, Alabama when the Plaintiffs' actions accrued and are continuing to do business in Mobile County; (e) the Plaintiffs' claims arise from the same conduct, transaction, occurrence or series of transactions or occurrences; and (f) maintaining a single action to resolve Plaintiffs' claims will serve the ends of judicial economy and efficiency.

### III.   FACTUAL ALLEGATIONS

29.    This case arises from uniform Master Vessel Charter Agreements entered into between Plaintiffs and Defendant BP America Production Company ("BP"). The uniform Master Vessel Charter Agreements were entered into as part of BP's VOO program. BP, Parsons Corporation, Danos & Curole and the Individual Defendants have engaged in an illegal and unlawful conspiracy to defraud Plaintiffs and to underpay Plaintiffs for services, equipment, materials, repairs and decontaminations related to the VOO program and the oil spill response. That conspiracy is described more fully below.

30.    Following the Deepwater Horizon oil spill, BP established the VOO program as part of BP's response to the oil spill. Publicly, BP claimed that the VOO program would help clean up the Gulf Coast and would provide money to people affected by the oil spill. Once implemented, the VOO program was marred by mismanagement, corruption and broken promises. As a result, when the VOO program was concluded, thousands of participants, including Plaintiffs, were left holding the bag for millions of dollars for unpaid services, equipment, materials, repairs and decontaminations.

31.    The VOO program was organized, implemented, administered, orchestrated and operated through BP's Mobile Operations Center and BP's Mobile Incident Information Center, both of which have been located in Mobile County, Alabama at all times material hereto.

32.    At all times relevant to this Complaint, Individual Defendants Jason Ziglar, Dennis Berg, Danny Black, Michael Allen, Michael English, Brandy Buxton, Justin Nash, Ed Thompson, Leigh Barnes, Marsha Davidson, Charlotte Thompson, Phil Payne and Donald Fredrickson were

based out of Mobile County, Alabama and worked and operated from BP's Mobile Operations Center and BP's Mobile Incident Information Center. Individual Defendants Jason Ziglar, Dennis Berg, Danny Black, Michael Allen, Michael English, Brandy Buxton, Justin Nash, Ed Thompson, Leigh Barnes, Marsha Davidson, Charlotte Thompson, Phil Payne and Donald Fredrickson were instrumental in implementing and carrying out BP and the other Corporate Defendants' conspiracy to defraud Plaintiffs, to fraudulently induce Plaintiffs into the VOO program and to underpay Plaintiffs for services, equipment, materials, repairs and decontaminations related to Plaintiffs' vessels' participation in the VOO program.

33.    To implement the VOO program, BP and the other Defendants needed to mobilize thousands of vessels, captains and crew members in a very short period of time. However, many of the vessels, captains and crew members that needed to be mobilized, although idled by the Deepwater Horizon oil spill, were entitled under applicable law to be reimbursed by BP for all of their lost income resulting from the Deepwater Horizon oil spill. As a result, in order to effectively implement the VOO program, BP and the other Defendants had to convince vessel owners, captains and crew members that they would receive more money through the VOO program than if they sat idle at the dock or pursued other employment or income opportunities.

34.    In late April 2010 and continuing through the summer of 2010, BP and the other Defendants launched a campaign to solicit participants for the VOO program. This campaign consisted of, among other things, town hall and community meetings, television, radio, print and internet advertisements and assorted other meetings, communications and discussions with individuals and small groups.

35.    BP's town hall and community meetings were open to the public and often videotaped.  The town hall and community meetings were BP and the other Defendants' primary means of "getting the word out" about the VOO program.  The representations and communications made by BP and the other Defendants during these meetings were intended and expected to be communicated to and relied on by persons not present at the town hall and community meetings.

36.    Throughout this campaign, and to encourage vessel owners, captains and crew members to participate in the VOO program, BP and the other Defendants represented, promised and warranted, among other things, that (a) VOO participants would be paid for standby time; (b) VOO participants would be fully reimbursed for any damage to their vessels that occurred while the vessels were in the VOO program; (c) VOO participants would be reimbursed for costs and expenses incurred as a result of the VOO program; (d) VOO participants' vessels would be decontaminated at BP's expense at the conclusion of the VOO program; and (e) the income that VOO participants received through the VOO program would not be used to offset the lost income claims that VOO participants had against BP as a result of the Deepwater Horizon oil spill.  BP and the other Defendants knew that these representations were false when made.  Further, these false representations were part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to defraud Plaintiffs and to underpay Plaintiffs for services, equipment, materials, repairs and decontaminations related to Plaintiffs' participation in the VOO program.

37.    In order to gain entry into the VOO program, a vessel owner was required to execute a Master Vessel Charter Agreement.  The Master Vessel Charter Agreement was substantially identical for each participant in the VOO program.

-20-

38.    The Master Vessel Charter Agreement provides that (a) the charter begins when the vessel is activated; (b) after being activated, the vessel must be available and ready to work 24 hours a day, 7 days a week; and (c) the charter does not end until BP sends the vessel owner an "off-hire dispatch notification" and the vessel is decontaminated.

39.    The Master Vessel Charter Agreement also required that BP: (a) reimburse VOO participants for damage to their vessels that occurred while the vessels were in the VOO program; (b) reimburse VOO participants for costs and expenses incurred as a result of the VOO program; and (c) decontaminate the vessels that participated in the VOO program at BP's expense.

40.    After VOO participants executed the Master Vessel Charter Agreement, BP and the other Defendants continued to represent to VOO participants that they: (a) would be paid for standby time; (b) would be fully reimbursed for any damage to their vessels that occurred while the vessels were in the VOO program; (c) would be reimbursed for costs and expenses incurred as a result of the VOO program; (d) would have their vessels decontaminated at BP's expense at the conclusion of the VOO program; and (e) would not have the income that they received through the VOO program offset against the lost income claims that they had against BP as a result of the Deepwater Horizon oil spill. BP and the other Defendants knew that these representations were false when made. Further, these false representations were part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to defraud Plaintiffs and to underpay Plaintiffs for services, equipment, materials, repairs and decontaminations related to Plaintiffs' participation in the VOO program.

41.    The invoicing and payment program designed by BP and the other Defendants for the VOO program was intentionally slow and inefficient. VOO participants were routinely told that their

paper work and invoices were insufficient or had been lost. At times, it took weeks and months for VOO participants to be paid for services, equipment, materials and repairs. When payment was finally received, it was difficult, if not impossible, for VOO participants to tell which invoices and services, equipment, materials and repairs the payment applied to.

42. This deliberately slow and confusing payment methodology was part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to underpay VOO participants. In particular, BP and the other Defendants used this intentionally slow and deceptive process to prevent VOO participants from discovering that BP and the other Defendants intended to underpay VOO participants.

43. Beginning in July 2010, BP and the other Defendants decided to phase out the VOO program. However, with oil still in the Gulf of Mexico and mounting public pressure on BP, BP and the other Defendants determined that it would be a public relations disaster to send thousands of VOO participants an "off-hire dispatch notification" pursuant to the uniform Master Service Charter Agreements. Accordingly, as BP and the other Defendants increased the number of VOO participants that were on standby, BP and the other Defendants continued to represent to VOO participants that they were still in the VOO program and that they would be fully paid for services, equipment, materials, repairs and decontaminations related to Plaintiffs' participation in the VOO program. These representations were part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to defraud and to underpay VOO participants.

44. In late July 2010, Tropical Storm Bonnie came ashore in Louisiana. Tropical Storm Bonnie provided BP and the other Defendants with an opportunity to begin substantially phasing out the VOO program. Prior to Tropical Storm Bonnie's landfall, BP and the other Defendants put

-22-

virtually all participants in the VOO program on standby and began moving substantial amounts of VOO materials, equipment and assets out of the Gulf Region. BP and the other Defendants represented, promised and warranted to the press, public and VOO participants that this demobilization was in preparation for Tropical Storm Bonnie, that the VOO program was not being phased out, and that VOO participants would be back out on the water in no time. The reality, however, was that BP and the other Defendants did not want to deal with the public relations fallout of telling the VOO participants that the VOO program was being phased out.

45.     After Tropical Storm Bonnie's landfall, the majority of VOO participants remained on standby and were not called back out on the water, as BP and the other Defendants had represented. In late August 2010, with the Macondo Well capped, BP began sending official "off-hire dispatch notifications" to VOO participants. Following notification of being off-hire, Plaintiffs attempted to have their vessels decontaminated, only to be put off for weeks or months by BP and the other Defendants. Since that time, BP and the other Defendants have refused to pay VOO participants for services, equipment, materials, repairs and decontaminations related to Plaintiffs' participation in the VOO program.

46.     Since the VOO program ended, BP and the other Defendants have refused to compensate Plaintiffs for services, equipment, materials, repairs and decontaminations related to Plaintiffs' participation in the VOO program, as required by the Master Vessel Charter Agreements and as represented by BP and the other Defendants.

47.     Both prior to and during the VOO program, BP and the other Defendants concealed from Plaintiffs that (a) VOO participants would not be paid for standby time; (b) VOO participants would not be fully reimbursed for damage to their vessels that occurred while the vessels were in the

-23-

VOO program; (c) VOO participants would not be reimbursed for costs and expenses incurred as a result of the VOO program; (d) VOO participants' vessels would not be decontaminated at BP's expense at the conclusion of the VOO program; and (e) the income that VOO participants received through the VOO program would offset the claims VOO participants had against the BP as a result of the Deepwater Horizon oil spill. Further, BP and the other Defendants' concealment of these material facts from Plaintiffs was part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to defraud Plaintiffs and to underpay Plaintiffs for services, equipment, materials, repairs and decontaminations related to Plaintiffs' participation in the VOO program.

### *Ronny Eastridge*

48.     Some time in early June 2010, Plaintiff Eastridge and BP entered into Master Vessel Charter Agreement No. 57249 for a 19 foot vessel owned by Plaintiff Eastridge. BP agreed to pay Plaintiff Eastridge $1,200 per day as charter hire for the vessel.

49.     Prior to and after Plaintiff Eastridge and BP entered into Master Vessel Charter Agreement No. 57249, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Eastridge, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program. Additional representations made by Defendants to Plaintiff Eastridge include, but are not limited to, the following:

> a.     Some time during June 2010, Defendants Lia Barnes and Marsha Davidson represented and warranted to Plaintiff Eastridge that BP would reimburse him for any damage his vessel incurred while working in the VOO program.

b.    On or about June 24, 2010, employees and agents of Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Eastridge that his vessel was being placed on rotation and that he should remain ready to return active duty on the water.

50.    Plaintiff Eastridge received an off-hire dispatch notification for his vessel some time after August 18, 2010.

51.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Eastridge has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Robert Warren and Castaways, LLC*

52.    In May 2010, Plaintiffs Warren and Castaways, LLC and BP entered into Master Vessel Charter Agreement No. 55002 for 2 vessels: (1) a 21 foot vessel for which BP agreed to pay $1,200 per day as charter hire for the vessel; and (2) a 16 foot vessel for which BP agreed to pay $1,200 per day as charter hire for the vessel.

53.    Prior to and after Plaintiffs Warren and Castaways, LLC and BP entered into Master Vessel Charter Agreement No. 55002, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiffs Warren and Castaways, LLC among other things, that they would be paid for standby time and that they would be fully reimbursed for any damage to their vessels that occurred while the vessels were in the VOO program.

-25-

Additional representations made by Defendants to Plaintiffs Warren and Castaways, LLC include, but are not limited to, the following:

      a.    In May 2010, Defendant Black represented and warranted to Plaintiffs Warren and Castaways, LLC that they would be reimbursed for any damage to their vessels incurred as a result of work they performed during the VOO program.

54.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiffs Warren and Castaways, LLC have not been fully compensated for: (a) time their vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of their vessels.

### *Erin McClendon and Arthur McClendon*

55.    On or about May 5, 2010, Plaintiffs Erin McClendon and Arthur McClendon and BP entered into Master Vessel Charter Agreement No. 55103 for a 21 foot vessel for which BP agreed to pay $1,200 per day as charter hire for the vessel.

56.    On or about May 8, 2010, Plaintiffs Erin McClendon and Arthur McClendon and BP entered into Master Vessel Charter Agreement No. 55211 for 2 vessels: (1) a 35 foot vessel for which BP agreed to pay $1,500 per day as charter hire for the vessel; and (2) a 16 foot vessel for which BP agreed to pay $1,200 per day as charter hire for the vessel.

57.    Prior to and after Plaintiffs Erin McClendon and Arthur McClendon and BP entered into Master Vessel Charter Agreement Nos. 55103 and 55211, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiffs Erin

McClendon and Arthur McClendon, among other things, that they would be paid for standby time and that they would be fully reimbursed for any damage to their vessels that occurred while the vessels were in the VOO program. Additional representations made to Plaintiffs Erin McClendon and Arthur McClendon include, but are not limited to, the following:

a.  On or about May 8, 2010 and again on May 10, 2010, at community meetings attended by Plaintiff Arthur McClendon, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiffs Erin McClendon and Arthur McClendon that they would be paid for the use of their vessels whether or not those vessels were working actively on the water.

b.  On or about May 20, 2010, Bill Jones, an employee and agent of BP and/or Danos & Curole Staffing, LLC, represented and warranted to Plaintiffs Erin McClendon and Arthur McClendon that they should bill for their vessels every two weeks whether the vessels were actively working on the water or not.

c.  On or about June 7, 2010, and on numerous occasions after that date, Ryan Friedlander, an employee and agent of Corporate Defendants and Fictitious Defendants, represented and warranted to Plaintiffs Erin McClendon and Arthur McClendon that they should invoice for their vessels and crew even when their vessels were not being actively utilized.

d.  On or about July 5, 2010, an employee and agent of the Corporate Defendants and Fictitious defendants telephoned and represented and warranted to

Plaintiffs Erin McClendon and Arthur McClendon that their vessels were being placed on standby but that they should keep the vessels and crew available to return to work on 4 to 5 hours notice.

e.  On or about September 16, 2010, during a telephone call made by Plaintiff Arthur McClendon to Danos & Curole Staffing, LLC regarding unpaid standby invoices, an employee and agent of Danos & Curole Staffing, LLC represented and warranted to Plaintiffs Erin McClendon and Arthur McClendon that their invoices would not be paid pursuant to BP's policy of denying payment of standby invoices that had gone into effect on June 24, 2010.

58.  Plaintiffs Erin McClendon and Arthur McClendon received an off-hire dispatch notification for their vessels on or after August 24, 2010.

59.  Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiffs Erin McClendon and Arthur McClendon have not been fully compensated for: (a) time their vessels actually spent on the water during the VOO program; (b) time their vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of their vessels.

## Ronald Waters

60.  On or about May 13, 2010, Plaintiff Waters and BP entered into Master Vessel Charter Agreement No. 56476 for a 21 foot vessel owned by Plaintiff Waters. BP agreed to pay Plaintiff Waters $1,200 per day as charter hire for the vessel.

61.     Prior to and after Plaintiff Waters and BP entered into Master Vessel Charter Agreement No. 56476, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Waters, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program. Additional representations made to Plaintiff Waters include, but are not limited to, the following:

a.     On or about May 13, 2010, at a community meeting in Mobile County attended by Plaintiff Waters, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Waters that once the Master Vessel Charter Agreement was signed, and until the contract was terminated, his vessel was considered in BP's possession and that he would be paid for all the time his vessel was under contract. These employees and agents of the Corporate Defendants and Fictitious Defendants further represented to Plaintiff Waters that once his vessel was under contract, the vessel could be not be used except by BP.

b.     On or about July 5, 2010, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Waters that he was being placed on standby and that he would be called back to active duty.

62.     Plaintiff Waters received an off-hire dispatch notification for his vessels some time after August 18, 2010.

-29-

63.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Waters has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Paul Shutt*

64.     On or about May 12, 2010, Plaintiff Paul Shutt and BP entered into Master Vessel Charter Agreement No. 55565 for 2 vessels vessel owned by Plaintiff Paul Shutt: (a) a 34 foot vessel for which BP agreed to pay Plaintiff Paul Shutt $1,500 per day as charter hire for the vessel; and (b) an 18 foot vessel for which BP agreed to pay Plaintiff Paul Shutt $1,200 per day as charter hire for the vessel.

65.     Prior to and after Plaintiff Paul Shutt and BP entered into Master Vessel Charter Agreement No. 55565, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Paul Shutt, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program.  Additional representations made by Defendants to Plaintiff Paul Shutt include, but are not limited to, the following:

a.      On or about May 12, 2010, at a community meeting attended by Plaintiff Paul Shutt in Mobile County, Alabama, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Paul Shutt that his vessels were now in BP's possession and could not be

-30-

used for any purposes other than for those of BP until the Master Vessel Charter Agreement was terminated.

b.     On or about July 22, 2010, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Paul Shutt that his vessels would be called back to work after the storm and that he should remain ready to return to active duty.

66.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Paul Shutt has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

### *Alfred Wilhite, Jr.*

67.    On or about May 6, 2010, Plaintiff Wilhite and BP entered into Master Vessel Charter Agreement No. 55022 for 2 vessels owned by Plaintiff Wilhite: (1) a 39 foot vessel for which BP agreed to pay Plaintiff Wilhite $1,500 per day as charter hire for the vessel; and (2) a 22 foot vessel for which BP agreed to pay Plaintiff Wilhite $1,200 per day as charter hire for the vessel.

68.    Prior to and after Plaintiff Wilhite and BP entered into Master Vessel Charter Agreement No. 55022, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Wilhite, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program. Additional representations made to Plaintiff Wilhite include, but are not limited to, the following:

-31-

a.    On or about May 6, 2010, at a community meeting in Baldwin County attended by Plaintiff Wilhite, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Wilhite that once he had signed the Master Vessel Charter Agreement, his vessels were only to be used for BP's purposes and had to remain ready and available to BP at all times.

b.    On or about July 21, 2010, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Wilhite that his vessels were being called back in to port due to the storm, but that his vessels would be called back to active duty.

69.    Plaintiff Wilhite received an off-hire dispatch notification for his vessels some time after August 27, 2010.

70.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Wilhite has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

### *Travis Stringfellow*

71.    Some time in May or June 2010, Plaintiff Stringfellow and BP entered into Master Vessel Charter Agreement No. 57191 for a 23 foot vessel owned by Plaintiff Stringfellow.  BP agreed to pay Plaintiff Stringfellow $1,200 per day as charter hire for the vessel.

72.     Prior to and after Plaintiff Stringfellow and BP entered into Master Vessel Charter Agreement No. 57191, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Stringfellow, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program. Additional representations made to Plaintiff Stringfellow include, but are not limited to, the following:

a.      On or about July 26, 2010 at the Bayou la Batre, Alabama VOO check-in port, an employee and agent of Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Stringfellow that he had signed a binding contract with BP stating that his vessel was under contract to BP twenty-four hours a day, seven days a week and that he could not use his vessel while he was on standby. This employee and agent further represented to Plaintiff Stringfellow that he would continue to receive his daily pay until he received a decontamination letter from BP.

73.     Plaintiff Stringfellow received an off-hire dispatch notification for his vessel some time after August 18, 2010.

74.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Stringfellow has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

-33-

### *Henry Cotton, Jr.*

75.     On or about May 14, 2010, Plaintiff Henry Cotton and BP entered into Master Vessel Charter Agreement No. 57229 for 3 vessels owned by Plaintiff Henry Cotton: (1) a 26 foot vessel for which BP agreed to pay Plaintiff Henry Cotton $1,200 per day as charter hire for the vessel; (2) a 23 foot vessel for which BP agreed to pay Plaintiff Henry Cotton $1,200 per day as charter hire for the vessel; and (3) a 14 foot vessel for which BP agreed to pay Plaintiff Henry Cotton $1,200 per day as charter hire for the vessel.

76.     Prior to and after Plaintiff Henry Cotton and BP entered into Master Vessel Charter Agreement No. 57229, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Henry Cotton, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program. Additional representations made to Plaintiff Henry Cotton include, but are not limited to, the following:

        a.     On or about May 14, 2010, at a community meeting attended by Plaintiff Henry Cotton in Mobile County, Alabama, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Henry Cotton that at the end of the VOO program his vessels would be put back in the same condition those vessels were in upon hire.

        b.     At some time after Plaintiff Henry Cotton was denied payment for his July and August 2010 standby time, an employee and agent of Danos & Curole Staffing, LLC represented and warranted to Plaintiff Henry Cotton during a telephone conversation that while the Master Vessel Charter Agreement

-34-

stated that Plaintiff Cotton should be paid until his contract was terminated, BP had instructed Danos & Curole Staffing, LLC not to pay any invoices submitted for standby time.

77.     Plaintiff Henry Cotton received an off-hire dispatch notification for his vessels some time after August 27, 2010.

78.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Henry Cotton has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

### *Randall Clark*

79.     On or about May 6, 2010, Plaintiff Randall Clark and BP entered into Master Vessel Charter Agreement No. 56255 for a 17 foot vessel owned by Plaintiff Randall Clark. BP agreed to pay Plaintiff Randall Clark $1,200 per day as charter hire for the vessel.

80.     Prior to and after Plaintiff Randall Clark and BP entered into Master Vessel Charter Agreement No. 56255, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Randall Clark, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program. Additional representations made by Defendants to Plaintiff Randall Clark include, but are not limited to, the following:

      a.     On or about May 6, 2010, at a community meeting attended by Plaintiff Randall Clark in Mobile County, Alabama, R. L. Bell, an employee and agent

of BP and/or Parsons Corporation, represented and warranted to Plaintiff Randall Clark that he should be ready and on standby to begin working once he received a call.

b.    On or about July 21, 2010, employees and agents of the Corporate and Fictitious Defendants represented and warranted to Plaintiff Randall Clark that he was being placed on standby and that he should remain ready to return to active duty.

81.    Plaintiff Randall Clark did not receive an off-hire dispatch notification for his vessel, but employees and agents of Corporate and Fictitious Defendants represented and warranted to Plaintiff Randall Clark on or about November 15, 2010, during a telephone call, that his Master Vessel Charter Agreement had been terminated on October 17, 2010.

82.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Randall Clark has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

## Steve Graham

83.    On or about June 16, 2010, Plaintiff Graham and BP entered into Master Vessel Charter Agreement No. 60588 for a 22 foot vessel owned by Plaintiff Graham. BP agreed to pay Plaintiff Graham $1,200 per day as charter hire for the vessel.

84.    Prior to and after Plaintiff Graham and BP entered into Master Vessel Charter Agreement No. 60588, the Corporate Defendants, some of the Individual Defendants and the

-36-

Fictitious Defendants represented and warranted to Plaintiff Graham, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.  Additional representations made by Defendants to Plaintiff Graham include, but are not limited to, the following:

      a.     On or about July 21, 2010, employees and agents of Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Graham that he would be called back to work after the storm passed, and that he should remain ready for the call back to active duty.

85.    Plaintiff Graham received an off-hire dispatch notification for his vessel some time after August 27, 2010.

86.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Graham has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Ernest Harris*

87.    Some time in May of 2010, Plaintiff Harris and BP entered into Master Vessel Charter Agreement No. 56196 for 2 vessels owned by Plaintiff Harris: (1) a 24 foot vessel for which BP agreed to pay Plaintiff Harris $1,200 per day as charter hire for the vessel; and (2) a 20 foot vessel for which BP agreed to pay Plaintiff Harris $1,200 per day as charter hire for the vessel.

88.    Prior to and after Plaintiff Harris and BP entered into Master Vessel Charter Agreement No. 56196, the Corporate Defendants, some of the Individual Defendants and the

-37-

Fictitious Defendants represented and warranted to Plaintiff Harris, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program. Additional representations made by Defendants to Plaintiff Harris include, but are not limited to, the following:

        a.     Some time in July 2010, John Parker, an employee and agent of Corporate Defendants, represented and warranted to Plaintiff Harris that he would be called back to work after the storm passed and that he should remain ready to return to active duty.

89.     Plaintiff Harris received an off-hire dispatch notification for his vessels some time after August 27, 2010.

90.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Harris has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

### *Larry Seaman*

91.     On or about May 17, 2010, Plaintiff Larry Seaman and BP entered into Master Vessel Charter Agreement No. 57792 for a 24 foot vessel owned by Plaintiff Larry Seaman. BP agreed to pay Plaintiff Larry Seaman $1,200 per day as charter hire for the vessel.

92.     Prior to and after Plaintiff Larry Seaman and BP entered into Master Vessel Charter Agreement No. 57792, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Larry Seaman, among other things, that

-38-

he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program. Additional representations made by Defendants to Plaintiff Larry Seaman include, but are not limited to, the following:

        a.      Some time in July 2010, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Larry Seaman that he would be called back to work after the storm and that he should remain ready to return to active duty.

93.     Plaintiff Larry Seaman received an off-hire dispatch notification for his vessel some time after August 27, 2010.

94.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Larry Seaman has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *William Vereen*

95.     On or about May 10, 2010, Plaintiff Vereen and BP entered into Master Vessel Charter Agreement No. 58740 for a 30 foot vessel owned by Plaintiff Vereen. BP agreed to pay Plaintiff Vereen $1,500 per day as charter hire for the vessel.

96.     Prior to and after Plaintiff Vereen and BP entered into Master Vessel Charter Agreement No. 58740, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Vereen, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel

that occurred while the vessel was in the VOO program. Additional representations made by Defendants to Plaintiff Vereen include, but are not limited to, the following:

      a.    On or about July 21, 2010, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Vereen that his vessel would be called back to work after the storm and that he should remain ready to return once he received the telephone call.

97.    Plaintiff Vereen received an off-hire dispatch notification for his vessel on September 10, 2010.

98.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Vereen has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Kevin Beebout*

99.    On or about May 12, 2010, Plaintiff Beebout and BP entered into Master Vessel Charter Agreement No. 59035 for a 23 foot vessel owned by Plaintiff Beebout. BP agreed to pay Plaintiff Beebout $1,200 per day as charter hire for the vessel.

100.    Prior to and after Plaintiff Beebout and BP entered into Master Vessel Charter Agreement No. 59035, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Beebout, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel

-40-

that occurred while the vessel was in the VOO program. Additional representations made to Plaintiff Beebout include, but are not limited to, the following:

    a.    On or about July 21, 2010, employees and agents of the Corporate and Fictitious Defendants represented and warranted to Plaintiff Beebout that he was being placed on standby and that he should remain ready to return to active duty.

101.    Plaintiff Beebout received an off-hire dispatch notification for his vessel some time after August 18, 2010.

102.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Beebout has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### _Rick Cotton_

103.    Some time in May or June 2010, Plaintiff Rick Cotton and BP entered into Master Vessel Charter Agreement No. 55067 for a 26 foot vessel owned by Plaintiff Rick Cotton. BP agreed to pay Plaintiff Rick Cotton $1,200 per day as charter hire for the vessel.

104.    Prior to and after Plaintiff Rick Cotton and BP entered into Master Vessel Charter Agreement No. 55067, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Rick Cotton, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his

-41-

vessel that occurred while the vessel was in the VOO program. Additional representations made by Defendants to Plaintiff Rick Cotton include, but are not limited to, the following:

> a.     At some time on or after July 21, 2010, Defendant Fredrickson represented and warranted to Plaintiff Rick Cotton that he would be called back after the storm passed and that he should remain ready to return to active duty.

105.    Plaintiff Rick Cotton received an off-hire dispatch notification for his vessel some time after August 27, 2010.

106.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Rick Cotton has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *John Adams*

107.    On or about May 10, 2010, Plaintiff Adams and BP entered into Master Vessel Charter Agreement No. 56151 for a 16 foot vessel owned by Plaintiff Adams. BP agreed to pay Plaintiff Adams $1,200 per day as charter hire for the vessel.

108.    On or about May 10, 2010, Plaintiff Adams and BP entered into Master Vessel Charter Agreement No. 56152 for a 22 foot vessel owned by Plaintiff Adams. BP agreed to pay Plaintiff Adams $1,200 per day as charter hire for the vessel.

109.    Prior to and after Plaintiff Adams and BP entered into Master Vessel Charter Agreement Nos. 56151 and 56152, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Adams, among other things, that

he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program.

110.    Plaintiff Adams received an off-hire dispatch notification for his vessels some time after August 27, 2010.

111.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Adams has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

### *Apalachee Girl, Inc.*

112.    On or about June 22, 2010, Plaintiff Apalachee Girl, Inc. and BP entered into Master Vessel Charter Agreement No. 60578 for a 96 foot vessel owned by Plaintiff Apalachee Girl, Inc. BP agreed to pay Plaintiff Apalachee Girl, Inc. $3,000 per day as charter hire for the vessel.

113.    Prior to and after Plaintiff Apalachee Girl, Inc. and BP entered into Master Vessel Charter Agreement No. 60578, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Apalachee Girl, Inc., among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessel that occurred while the vessel was in the VOO program.

114.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Apalachee Girl, Inc. has not been fully compensated for: (a) time its vessel actually spent on the water during the VOO program; (b) time its vessel spent on standby

during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of its vessel.

### *Theo Atkinson*

115.   On or about May 10, 2010, Plaintiff Atkinson and BP entered into Master Vessel Charter Agreement No. 56142 for a 22 foot vessel owned by Plaintiff Atkinson.  BP agreed to pay Plaintiff Atkinson $1,200 per day as charter hire for the vessel.

116.   Prior to and after Plaintiff Atkinson and BP entered into Master Vessel Charter Agreement No. 56142, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Atkinson, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

117.   Plaintiff Atkinson received an off-hire dispatch notification for his vessel some time after August 18, 2010.

118.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Atkinson has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Jason Baugh*

119.   On or about May 5, 2010, Plaintiff Jason Baugh and BP entered into Master Vessel Charter Agreement No. 55127 for a 23 foot vessel owned by Plaintiff Jason Baugh.  BP agreed to pay Plaintiff Jason Baugh $1,200 per day as charter hire for the vessel.

120.    Prior to and after Plaintiff Jason Baugh and BP entered into Master Vessel Charter Agreement No. 55127, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Jason Baugh, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

121.    Plaintiff Jason Baugh received an off-hire dispatch notification for his vessel some time after August 18, 2010.

122.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Jason Baugh has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *William Baugh*

123.    On or about May 8, 2010, Plaintiff William Baugh and BP entered into Master Vessel Charter Agreement No. 55150 for a 16 foot vessel owned by Plaintiff William Baugh.  BP agreed to pay Plaintiff William Baugh $1,200 per day as charter hire for the vessel.

124.    Prior to and after Plaintiff William Baugh and BP entered into Master Vessel Charter Agreement No. 55150, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff William Baugh, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

-45-

125.   Plaintiff William Baugh received an off-hire dispatch notification for his vessel some time after August 18, 2010.

126.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff William Baugh has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Kendall Bozeman*

127.   Some time in late May or early June 2010, Plaintiff Bozeman and BP entered into Master Vessel Charter Agreement No. 60586 for a 46 foot vessel owned by Plaintiff Bozeman. BP agreed to pay Plaintiff Bozeman $2,000 per day as charter hire for the vessel.

128.   Prior to and after Plaintiff Bozeman and BP entered into Master Vessel Charter Agreement No. 60586, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Bozeman, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

129.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Bozeman has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

-46-

### *Chris Bryant*

130.   Some time in May 2010, Plaintiff Chris Bryant and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Chris Bryant for which BP agreed to pay Plaintiff Chris Bryant a daily rate as charter hire for the vessel.

131.   Prior to and after Plaintiff Chris Bryant and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Chris Bryant, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

132.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Chris Bryant has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Kim Bryant*

133.   Some time in May 2010, Plaintiff Kim Bryant and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Kim Bryant for which BP agreed to pay Plaintiff Kim Bryant a daily rate as charter hire for the vessel.

134.   Prior to and after Plaintiff Kim Bryant and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Kim Bryant, among other things, that she would

be paid for standby time and that she would be fully reimbursed for any damage to her vessel that occurred while the vessel was in the VOO program.

135. Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Kim Bryant has not been fully compensated for: (a) time her vessel actually spent on the water during the VOO program; (b) time her vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of her vessel.

### *Norwood Bryant*

136. Some time in August 2010, Plaintiff Norwood Bryant and BP entered into Master Vessel Charter Agreement No. 60467 for a 27 foot vessel owned by Plaintiff Norwood Bryant. BP agreed to pay Plaintiff Norwood Bryant $1,200 per day as charter hire for the vessel.

137. Prior to and after Plaintiff Norwood Bryant and BP entered into Master Vessel Charter Agreement No. 60467, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Norwood Bryant, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

138. Plaintiff Norwood Bryant received an off-hire dispatch notification for his vessel some time after October 8, 2010.

139. Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Norwood Bryant has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby

during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *George Clark*

140.　On or about May 17, 2010, Plaintiff George Clark and BP entered into Master Vessel Charter Agreement No. 57777 for a 27 foot vessel owned by Plaintiff George Clark. BP agreed to pay Plaintiff George Clark $1,200 per day as charter hire for the vessel.

141.　Prior to and after Plaintiff George Clark and BP entered into Master Vessel Charter Agreement No. 57777, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff George Clark, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

142.　Plaintiff George Clark received an off-hire dispatch notification for his vessels some time after August 27, 2010.

143.　Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff George Clark has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Michelle Clark*

144.　On or about July 20, 2010, Plaintiff Michelle Clark and BP entered into Master Vessel Charter Agreement No. 50303 for a 24 foot vessel owned by Plaintiff Michelle Clark. BP agreed to pay Plaintiff Michelle Clark $1,200 per day as charter hire for the vessel.

-49-

145.    Prior to and after Plaintiff Michelle Clark and BP entered into Master Vessel Charter Agreement No. 50303, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Michelle Clark, among other things, that she would be paid for standby time and that she would be fully reimbursed for any damage to her vessel that occurred while the vessel was in the VOO program.

146.    Plaintiff Michelle Clark received an off-hire dispatch notification for her vessel some time in late August or early September 2010.

147.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Michelle Clark has not been fully compensated for: (a) time her vessel actually spent on the water during the VOO program; (b) time her vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of her vessel.

### Keith Clarke

148.    On or about May 13, 2010, Plaintiff Keith Clarke and BP entered into Master Vessel Charter Agreement No. 57189 for a 24 foot vessel owned by Plaintiff Keith Clarke. BP agreed to pay Plaintiff Keith Clarke $1,200 per day as charter hire for the vessel.

149.    Prior to and after Plaintiff Keith Clarke and BP entered into Master Vessel Charter Agreement No. 57189, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Keith Clarke, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

-50-

150.    Plaintiff Keith Clarke received an off-hire dispatch notification for his vessel some time in early September, 2010.

151.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Keith Clarke has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *William Leslie Clarke*

152.    On or about May 13, 2010, Plaintiff William Leslie Clarke and BP entered into Master Vessel Charter Agreement No. 58232 for two 19 foot vessels owned by Plaintiff William Leslie Clarke for which BP agreed to pay Plaintiff William Leslie Clarke $1,200 per day as charter hire for the vessels.

153.    Some time in June, 2010, Plaintiff William Leslie Clarke and BP entered into Master Vessel Charter Agreement No. 61059 for two 19 foot vessels previously under Master Vessel Charter Agreement No. 58232 and assigned MOB-58232.1. BP agreed to pay Plaintiff William Leslie Clarke $1,200 per day as charter hire for each vessel.

154.    Prior to and after Plaintiff William Leslie Clarke and BP entered into Master Vessel Charter Agreement Nos. 58232 and 61059, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff William Leslie Clarke, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program.

155.   Plaintiff William Leslie Clarke received off-hire dispatch notifications for his vessels some time in early September, 2010.

156.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff William Leslie Clarke has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

### *Nicholas Collier*

157.   On or about May 15, 2010, Plaintiff Nicholas Collier and BP entered into Master Vessel Charter Agreement No. 57372 for a 20 foot vessel owned by Plaintiff Nicholas Collier.  BP agreed to pay Plaintiff Nicholas Collier $1,200 per day as charter hire for the vessel.

158.   Prior to and after Plaintiff Nicholas Collier and BP entered into Master Vessel Charter Agreement No. 57372, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Nicholas Collier, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

159.   Plaintiff Nicholas Collier received an off-hire dispatch notification for his vessel some time after August 27, 2010.

160.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Nicholas Collier has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby

during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Pheland Collier*

161. On or about May 15, 2010, Plaintiff Pheland Collier and BP entered into Master Vessel Charter Agreement No. 57371 for a 20 foot vessel owned by Plaintiff Pheland Collier. BP agreed to pay Plaintiff Pheland Collier $1,200 per day as charter hire for the vessel.

162. Prior to and after Plaintiff Pheland Collier and BP entered into Master Vessel Charter Agreement No. 57371, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Pheland Collier, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

163. Plaintiff Pheland Collier received an off-hire dispatch notification for his vessel some time after August 27, 2010.

164. Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Pheland Collier has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Frank Conley*

165. On or about June 22, 2010, Plaintiff Conley and BP entered into Master Vessel Charter Agreement No. 60611 for a 22 foot vessel owned by Plaintiff Conley. BP agreed to pay Plaintiff Conley $1,200 per day as charter hire for the vessel.

166.    Prior to and after Plaintiff Conley and BP entered into Master Vessel Charter Agreement No. 60611, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Conley, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

167.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Conley has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Ronald Dismuke*

168.    On or about June 4, 2010, Plaintiff Dismuke and BP entered into Master Vessel Charter Agreement No. 56193 for 2 vessels owned by Plaintiff Dismuke: (a) a 24 foot vessel for which BP agreed to pay Plaintiff Dismuke $1,200 per day as charter hire for the vessel; and (2) a 22 foot vessel for which BP agreed to pay Plaintiff Dismuke $1,200 per day as charter hire for the vessel.

169.    Prior to and after Plaintiff Dismuke and BP entered into Master Vessel Charter Agreement No. 56193, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Dismuke, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program.

170.    Plaintiff Dismuke received an off-hire dispatch notification for his vessels some time after August 27, 2010.

171.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Dismuke has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

### *Ralph Foster*

172.    On or about May 3, 2010, Plaintiff Foster and BP entered into Master Vessel Agreement No. 50015 for 2 vessels owned by Plaintiff Foster: (1) a 30 foot vessel for which BP agreed to pay Plaintiff Foster $1,500 per day as charter hire for the vessel; and (2) a 22 foot vessel for which BP agreed to pay Plaintiff Foster $1,200 per day as charter hire for the vessel.

173.    Prior to and after Plaintiff Foster and BP entered into Master Vessel Charter Agreement No. 50015, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Foster, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program.

174.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Foster has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

-55-

### *Patricia Hamann*

175. On or about May 13, 2010, Plaintiff Hamann and BP entered into Master Vessel Charter Agreement No. 57072 for a 25 foot vessel owned by Plaintiff Hamann. BP agreed to pay Plaintiff Hamann $1,200 per day as charter hire for the vessel.

176. Prior to and after Plaintiff Hamann and BP entered into Master Vessel Charter Agreement No. 57072, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Hamann, among other things, that she would be paid for standby time and that she would be fully reimbursed for any damage to her vessel that occurred while the vessel was in the VOO program.

177. Plaintiff Hamann received an off-hire dispatch notification for her vessel some time after August 27, 2010.

178. Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Hamann has not been fully compensated for: (a) time her vessel actually spent on the water during the VOO program; (b) time her vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of her vessel.

### *John L. Howard*

179. On or about May 15, 2010, Plaintiff Howard and BP entered into Master Vessel Charter Agreement No. 57561 for 2 vessels owned by Plaintiff Howard: (1) a 45 foot vessel for which BP agreed to pay Plaintiff Howard $2,000 per day as charter hire for the vessel; and (2) a second vessel for which BP agreed to pay Plaintiff Howard $1,500 as charter hire for the vessel.

180.     Prior to and after Plaintiff Howard and BP entered into Master Vessel Charter Agreement No. 57561, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Howard, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program.

181.     Plaintiff Howard received an off-hire dispatch notification for his vessels on September 3, 2010.

182.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Howard has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

### *Winford Hutcherson, Jr.*

183.     On or about May 11, 2010, Plaintiff Winford Hutcherson, Jr. and BP entered into Master Vessel Charter Agreement No. 58195 for a 20 foot vessel owned by Plaintiff Winford Hutcherson, Jr. for which BP agreed to pay Plaintiff Winford Hutcherson, Jr. $1,200 per day as charter hire for the vessel.

184.     Prior to and after Plaintiff Winford Hutcherson, Jr. and BP entered into Master Vessel Charter Agreement No. 58195, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Winford Hutcherson, Jr., among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

185.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Winford Hutcherson, Jr. has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Winford Hutcherson, Sr.*

186.    On or about May 10, 2010, Plaintiff Winford Hutcherson, Sr. and BP entered into Master Vessel Charter Agreement No. 55726 for a 21 foot vessel owned by Plaintiff Winford Hutcherson, Sr. for which BP agreed to pay Plaintiff Winford Hutcherson, Sr. $1,200 per day as charter hire for the vessel.

187.    On or about May 12, 2010, Plaintiff Winford Hutcherson, Sr. and BP entered into Master Vessel Charter Agreement No. 58216 for a 16 foot vessel owned by Plaintiff Winford Hutcherson, Sr. for which BP agreed to pay Plaintiff Winford Hutcherson, Sr. $1,200 per day as charter hire for the vessel.

188.    Prior to and after Plaintiff Winford Hutcherson, Sr. and BP entered into Master Vessel Charter Agreement Nos. 55726 and 58216, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Winford Hutcherson, Sr., among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program.

189.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Winford Hutcherson, Sr. has not been fully compensated for: (a) time

his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

### *Gary Johnson*

190.    On or about May 13, 2010, Plaintiff Johnson and BP entered into Master Vessel Charter Agreement No. 57188 for a 20 foot vessel owned by Plaintiff Johnson. BP agreed to pay Plaintiff Johnson $1,200 per day as charter hire for the vessel.

191.    Prior to and after Plaintiff Johnson and BP entered into Master Vessel Charter Agreement No. 57188, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Johnson, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

192.    Plaintiff Johnson received an off-hire dispatch notification for his vessel some time after August 27, 2010.

193.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Johnson has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Joshua Locke*

194.    On or about May 15, 2010, Plaintiff Locke and BP entered into Master Vessel Charter Agreement No. 59385 for a 23 foot vessel owned by Plaintiff Locke.  BP agreed to pay Plaintiff Locke $1,200 per day as charter hire for the vessel.

195.    Prior to and after Plaintiff Locke and BP entered into Master Vessel Charter Agreement No. 59385, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Locke, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

196.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Locke has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Donald McDonald, Charles Drummond, Jr. and Starlite-USA, Inc.*

197.    On or about May 17, 2010, Plaintiffs McDonald, Drummond and Starlite-USA and BP entered into Master Vessel Charter Agreement No. 57664 for a 38 foot vessel.  BP agreed to pay $1,500 per day as charter hire for the vessel.

198.    On or about May 17, 2010, Plaintiffs McDonald, Drummond and Starlite-USA and BP entered into Master Vessel Charter Agreement No. 57663 for a 20 foot vessel.  BP agreed to pay $1,200 per day as charter hire for the vessel.

199.    Prior to and after Plaintiffs McDonald, Drummond and Starlite-USA and BP entered into Master Vessel Charter Agreement Nos. 57663 and 57664, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiffs McDonald, Drummond and Starlite-USA, among other things, that they would be paid for standby time and that they would be fully reimbursed for any damage to the vessels that occurred while the vessels were in the VOO program.

200.    Plaintiff Drummond received an off-hire dispatch notification for one vessel some time after August 18, 2010.

201.    Plaintiff McDonald received an off-hire dispatch notification for one vessel some time after August 27, 2010.

202.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiffs McDonald, Drummond and Starlite-USA have not been fully compensated for: (a) time their vessels actually spent on the water during the VOO program; (b) time their vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of their vessels.

### M S & R, LLC

203.    Some time in May 2010, Plaintiff M S & R, LLC and BP entered into Master Vessel Charter Agreement No. 56236.1 for a 66 foot vessel owned by Plaintiff M S & R, LLC. BP agreed to pay Plaintiff M S & R, LLC $3,000 per day as charter hire for the vessel.

204.    Prior to and after Plaintiff M S & R, LLC and BP entered into Master Vessel Charter Agreement No. 56236.1, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff M S & R, LLC, among other things, that

-61-

it would be paid for standby time and that it would be fully reimbursed for any damage to its vessel that occurred while the vessel was in the VOO program.

205.    Plaintiff M S & R, LLC received an off-hire dispatch notification for its vessel some time after September 29, 2010.

206.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff M S & R, LLC has not been fully compensated for: (a) time its vessel actually spent on the water during the VOO program; (b) time its vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of its vessel.

### *Trieu Ngoc Nguyen*

207.    Some time in May or June 2010, Plaintiff Nguyen and BP entered into Master Vessel Charter Agreement No. 56217 for a 73 foot vessel owned by Plaintiff Nguyen.  BP agreed to pay Plaintiff Nguyen $3,000 per day as charter hire for the vessel.

208.    Prior to and after Plaintiff Nguyen and BP entered into the Master Vessel Charter Agreement No. 56217, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Nguyen, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

209.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Nguyen has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the

VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Glenna Cheryl Odom*

210.    On or about May 18, 2010, Plaintiff Odom and BP entered into Master Vessel Charter Agreement No. 58120 for an 18 foot vessel owned by Plaintiff Odom.  BP agreed to pay Plaintiff Odom $1,200 per day as charter hire for the vessel.

211.    On or about July 1, 2010, Plaintiff Odom and BP entered into Master Vessel Charter Agreement No. 60870 for a 23 foot vessel owned by Plaintiff Odom.  BP agreed to pay Plaintiff Odom $1,200 per day as charter hire for the vessel.

212.    Prior to and after Plaintiff Odom and BP entered into Master Vessel Charter Agreement Nos. 58120 and 60870, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Odom, among other things, that she would be paid for standby time and that she would be fully reimbursed for any damage to her vessels that occurred while the vessels were in the VOO program.

213.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Odom has not been fully compensated for: (a) time her vessels actually spent on the water during the VOO program; (b) time her vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of her vessels.

### *James Paar and Paar Media Group, Inc.*

214.    On or about May 9, 2010, Plaintiffs Paar and Paar Media Group, Inc. and BP entered into Master Vessel Charter Agreement No. 59449 for a 25 foot vessel for which BP agreed to pay $1,200 per day as charter hire for the vessel.

215.    Prior to and after Plaintiffs Paar and Paar Media Group and BP entered into Master Vessel Charter Agreement No. 59449, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiffs Paar and Paar Media Group, among other things, that they would be paid for standby time and that they would be fully reimbursed for any damage to the vessel that occurred while the vessel was in the VOO program.

216.    Plaintiff Paar received an off-hire dispatch notification for the vessel some time after August 18, 2010.

217.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiffs Paar and Paar Media Group have not been fully compensated for: (a) time their vessel actually spent on the water during the VOO program; (b) time their vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of their vessel.

### *Chad Peterson*

218.    On or about May 8, 2010, Plaintiff Peterson and BP entered into Master Vessel Charter Agreement No. 55742 for a 22 foot vessel owned by Plaintiff Chad Peterson for which BP agreed to pay Plaintiff Chad Peterson $1,200 per day as charter hire for the vessel.

219. On or about June 1, 2010, Plaintiff Chad Peterson and BP entered into Master Vessel Charter Agreement No. 59417 for a 22 foot vessel owned by Plaintiff Chad Peterson for which BP agreed to pay Plaintiff Chad Peterson $1,200 per day as charter hire for the vessel.

220. Prior to and after Plaintiff Chad Peterson and BP entered into Master Vessel Charter Agreement Nos. 55742 and 59417, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Chad Peterson, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program.

221. Plaintiff Chad Peterson received off-hire dispatch notifications for his vessels some time after August 18, 2010.

222. Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Chad Peterson has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

### *David Pollock*

223. Some time in May or June 2010, Plaintiff Pollock and BP entered into Master Vessel Charter Agreement No. 56468 for a 21 foot vessel owned by Plaintiff Pollock. BP agreed to pay Plaintiff Pollock $1,200 per day as charter hire for the vessel.

224. Prior to and after Plaintiff Pollock and BP entered into Master Vessel Charter Agreement No. 56468, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Pollock, among other things, that he

-65-

would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

225. Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Pollock has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Pat Rankin*

226. On or about May 24, 2010, Plaintiff Rankin and BP entered into Master Vessel Charter Agreement No. 60007 for eight 80 foot vessels owned by Plaintiff Rankin. BP agreed to pay Plaintiff Rankin $3,000 per day as charter hire for each vessel.

227. Prior to and after Plaintiff Rankin and BP entered into Master Vessel Charter Agreement No. 60007, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Rankin, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program.

228. Plaintiff Rankin received an off-hire dispatch notification for some of his vessels some time after August 27, 2010.

229. Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Rankin has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during

the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

### *Darrell Roberts*

230.     On or about May 9, 2010, Plaintiff Darrell Roberts and BP entered into Master Vessel Charter Agreement No. 55369 for two 24 foot vessels owned by Plaintiff Darrell Roberts. BP agreed to pay Plaintiff Darrell Roberts $1,200 per day as charter hire for each vessel.

231.     Some time in May or early June 2010, Plaintiff Darrell Roberts and BP entered into Master Vessel Charter Agreement No. 58377 for a vessel owned by Plaintiff Darrell Roberts. BP agreed to pay Plaintiff Darrell Roberts $1,200 per day as charter hire for the vessel.

232.     Prior to and after Plaintiff Darrell Roberts and BP entered into Master Vessel Charter Agreement Nos. 55369 and 58377, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Darrell Roberts, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program.

233.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Darrell Roberts has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

-67-

### *Cheryl Roberts*

234.    On or about May 17, 2010, Plaintiff Cheryl Roberts and BP entered into Master Vessel Charter Agreement No. 58709 for a 15 foot vessel for which BP agreed to pay Plaintiff Cheryl Roberts $1,200 per day as charter hire for the vessel.

235.    Prior to and after Plaintiff Cheryl Roberts and BP entered into Master Vessel Charter Agreement No. 58709, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Cheryl Roberts, among other things, that she would be paid for standby time and that she would be fully reimbursed for any damage to her vessel that occurred while the vessel was in the VOO program.

236.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Cheryl Roberts has not been fully compensated for: (a) time her vessel actually spent on the water during the VOO program; (b) time her vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of her vessel.

### *Rough Water Seafood, LLC*

237.    On or about May 25, 2010, Plaintiff Rough Water Seafood, LLC and BP entered into Master Vessel Charter Agreement No. 59314 for a 38 foot vessel owned by Plaintiff Rough Water Seafood. BP agreed to pay Plaintiff Rough Water Seafood $1,500 per day as charter hire for the vessel.

238.    In late May or early June 2010, Plaintiff Rough Water Seafood and BP entered into Master Vessel Charter Agreement No. 60265 for a 32 foot vessel owned by Plaintiff Rough Water

-68-

Seafood. BP agreed to pay Plaintiff Rough Water Seafood $1,500 per day as charter hire for the vessel.

239.    Prior to and after Plaintiff Rough Water Seafood and BP entered into Master Vessel Charter Agreement Nos. 59314 and 60265, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Rough Water Seafood, among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessels that occurred while the vessels were in the VOO program.

240.    Plaintiff Rough Water Seafood received an off-hire dispatch notification for one of its vessels some time after August 27, 2010.

241.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Rough Water Seafood has not been fully compensated for: (a) time its vessels actually spent on the water during the VOO program; (b) time its vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of its vessels.

### *Ritchie Russell and Linda Russell*

242.    Some time in May 2010, Plaintiffs Ritchie Russell and Linda Russell and BP entered into a Master Vessel Charter Agreement for a vessel for which BP agreed to pay Plaintiffs Ritchie Russell and Linda Russell a daily rate as charter hire for the vessel.

243.    Prior to and after Plaintiffs Ritchie Russell and Linda Russell and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiffs Ritchie Russell and Linda Russell,

among other things, that they would be paid for standby time and that they would be fully reimbursed for any damage to their vessel that occurred while the vessel was in the VOO program.

244.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiffs Ritchie Russell and Linda Russell have not been fully compensated for: (a) time their vessel actually spent on the water during the VOO program; (b) time their vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of their vessel.

### *Shawn Ryan*

245.    On or about May 10, 2010, Plaintiff Ryan and BP entered into Master Vessel Charter Agreement No. 56161 for an 18 foot vessel owned by Plaintiff Ryan for which BP agreed to pay Plaintiff Ryan $1,200 per day as charter hire for the vessel.

246.    Prior to and after Plaintiff Ryan and BP entered into Master Vessel Charter Agreement No. 56161, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Ryan, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

247.    Plaintiff Ryan received an off-hire dispatch notification for his vessel some time after August 18, 2010.

248.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Ryan has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO

program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### Darren Seaman

249.    On or about May 17, 2010, Plaintiff Darren Seaman and BP entered into Master Vessel Charter Agreement No. 57776 for an 18 foot vessel owned by Plaintiff Darren Seaman. BP agreed to pay Plaintiff Darren Seaman $1,200 per day as charter hire for the vessel.

250.    Prior to and after Plaintiff Darren Seaman and BP entered into the Master Vessel Charter Agreement No. 57776, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Darren Seaman, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

251.    Plaintiff Darren Seaman received an off-hire dispatch notification for his vessel some time after August 27, 2010.

252.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Darren Seaman has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### Robert Seaman

253.    Some time in June 2010, Plaintiff Robert Seaman and BP entered into Master Vessel Charter Agreement No. 61002 for an 18 foot vessel owned by Plaintiff Robert Seaman. BP agreed to pay Plaintiff Robert Seaman $1,200 per day as charter hire for the vessel.

-71-

254.    Prior to and after Plaintiff Robert Seaman and BP entered into Master Vessel Charter Agreement No. 61002, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Robert Seaman, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

255.    Plaintiff Robert Seaman received an off-hire dispatch notification for his vessel some time after August 18, 2010.

256.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Robert Seaman has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Steven Shutt*

257.    On or about May 12, 2010, Plaintiff Steven Shutt and BP entered into Master Vessel Charter Agreement No. 56113 for a 23 foot vessel owned by Plaintiff Steven Shutt. BP agreed to pay Plaintiff Steven Shutt $1,200 per day as charter hire for the vessel.

258.    Prior to and after Plaintiff Steven Shutt and BP entered into Master Vessel Charter Agreement No. 56113, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Steven Shutt, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

259.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Steven Shutt has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Darrin Simmons*

260.    On or about May 8, 2010, Plaintiff Darrin Simmons and BP entered into Master Vessel Charter Agreement No. 55208 for 4 vessels vessel owned by Plaintiff Darrin Simmons: (1) a 96 foot vessel for which BP agreed to pay Plaintiff Darrin Simmons $3,000 per day as charter hire for the vessel; (2) two 25 foot vessels for which BP agreed to pay Plaintiff Darrin Simmons $1,200 per day as charter hire for the vessels; and (3) an 18.5 foot vessel for which BP agreed to pay Plaintiff Darrin Simmons $1,200 per day as charter hire for the vessel.

261.    Prior to and after Plaintiff Darrin Simmons and BP entered into Master Vessel Charter Agreement No. 55208, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Darrin Simmons, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO program.

262.    Plaintiff Darrin Simmons received an off-hire dispatch notification for his vessel some time after August 18, 2010.

263.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Darrin Simmons has not been fully compensated for: (a) time his vessels actually spent on the water during the VOO program; (b) time his vessels spent on standby

during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessels.

### *John Simmons*

264.    On or about July 7, 2010, Plaintiff John Simmons and BP entered into Master Vessel Charter Agreement No. 60943 for a 20 foot vessel owned by Plaintiff John Simmons. BP agreed to pay Plaintiff John Simmons $1,200 per day as charter hire for the vessel.

265.    Prior to and after Plaintiff John Simmons and BP entered into Master Vessel Charter Agreement No. 60943, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff John Simmons, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

266.    Plaintiff John Simmons received an off-hire dispatch notification for his vessel some time in late August or early September 2010.

267.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff John Simmons has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Jonathan Randall Townsend*

268.    Some time in May or June 2010, Plaintiff Townsend and BP entered into Master Vessel Charter Agreement No. 55470 for a 24 foot vessel owned by Plaintiff Townsend. BP agreed to pay Plaintiff Townsend $1,200 per day as charter hire for the vessel.

269.    Prior to and after Plaintiff Townsend and BP entered into Master Vessel Charter Agreement No. 55470, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Townsend, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

270.    Plaintiff Townsend received an off-hire dispatch notification for his vessel some time after August 27, 2010.

271.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Townsend has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Don Trigg*

272.    On or about May 10, 2010, Plaintiff Trigg and BP entered into Master Vessel Charter Agreement No. 58165 for a 22 foot vessel owned by Plaintiff Trigg. BP agreed to pay Plaintiff Trigg $1,200 per day as charter hire for the vessel.

273.    Prior to and after Plaintiff Trigg and BP entered into Master Vessel Charter Agreement No. 58165, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Trigg, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

-75-

274.   Plaintiff Trigg received an off-hire dispatch notification for his vessel some time after August 18, 2010.

275.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Trigg has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Robert Walker*

276.   Some time in late June or early July 2010, Plaintiff Walker and BP entered into Master Vessel Charter Agreement No. 60636 for a 23 foot vessel owned by Plaintiff Walker.  BP agreed to pay Plaintiff Walker $1,200 per day as charter hire for the vessel.

277.   Prior to and after Plaintiff Walker and BP entered into Master Vessel Charter Agreement No. 60636, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Walker, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

278.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Walker has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Lee Wilburn*

279.     On or about May 5, 2010, Plaintiff Wilburn and BP entered into Master Vessel Charter Agreement No. 60854 for a 24 foot vessel owned by Plaintiff Wilburn. BP agreed to pay Plaintiff Wilburn $1,200 per day as charter hire for the vessel.

280.     Prior to and after Plaintiff Wilburn and BP entered into Master Vessel Charter Agreement No. 60854, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Wilburn, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO program.

281.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Wilburn has not been fully compensated for: (a) time his vessel actually spent on the water during the VOO program; (b) time his vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of his vessel.

### *Dale Woodruff and R & D Charters, Inc.*

282.     Some time in May or June 2010, Plaintiffs Woodruff and R & D Charters, Inc. and BP entered into Master Vessel Charter Agreement No. 58856 for a 52 foot vessel. BP agreed to pay $2,000 per day as charter hire for the vessel.

283.     On or about May 14, 2010, Plaintiffs Woodruff and R & D Charters and BP entered into Master Vessel Charter Agreement No. 60264 for a 40 foot vessel. BP agreed to pay $1,500 per day as charter hire for the vessel.

284.   Prior to and after Plaintiffs Woodruff and R & D Charters and BP entered into Master Vessel Charter Agreement Nos. 58856 and 60264, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiffs Woodruff and R & D Charters, among other things, that they would be paid for standby time and that they would be fully reimbursed for any damage to their vessels that occurred while the vessels were in the VOO program.

285.   Plaintiff Woodruff received off-hire dispatch notifications for the vessels some time after August 27, 2010.

286.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiffs Woodruff and R & D Charters have not been fully compensated for: (a) time their vessel actually spent on the water during the VOO program; (b) time their vessel spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of their vessels.

### *Glenn Young and Young Enterprises, Inc.*

287.   On or about May 15, 2010, Plaintiffs Glenn Young and Young Enterprises, Inc. and BP entered into Master Vessel Charter Agreement No. 57420 for 2 vessels: (1) a 31 foot vessel for which BP agreed to pay $1,500 per day as charter hire for the vessel; and (2) a 21 foot vessel for which BP agreed to pay $1,200 per day as charter hire for the vessel.

288.   On or about May 15, 2010, Plaintiffs Glenn Young and Young Enterprises and BP entered into Master Vessel Charter Agreement No. 57421 for 2 vessels: (1) a 31 foot vessel for which BP agreed to pay $1,500 per day as charter hire for the vessel; and (2) a 14 foot vessel for which BP agreed to pay $1,200 per day as charter hire for the vessel.

289.     Prior to and after Plaintiffs Glenn Young and Young Enterprises and BP entered into Master Vessel Charter Agreement Nos. 57420 and 57421, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiffs Glenn Young and Young Enterprises, among other things, that they would be paid for standby time and that they would be fully reimbursed for any damage to their vessels that occurred while the vessels were in the VOO program.

290.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiffs Glenn Young and Young Enterprises have not been fully compensated for: (a) time their vessels actually spent on the water during the VOO program; (b) time their vessels spent on standby during the VOO program; (c) reimbursable costs and expenses incurred as a result of the VOO program; and/or (d) repairs and decontamination of their vessels.

## IV.     LEGAL THEORIES

### COUNT ONE
### Breach of Contract

291.     Plaintiffs incorporate by reference the preceding allegations of this Complaint as if fully set forth herein.

292.     BP has breached the terms of the uniform Master Vessel Charter Agreements.  In particular, BP has refused and failed to pay Plaintiffs for services, equipment, materials, repairs and decontaminations, as required by each of the Plaintiffs' Master Vessel Charter Agreements entered into with BP.

WHEREFORE, Plaintiffs demand judgment against Defendant BP America Production for compensatory damages, plus interest, costs and all other relief that is appropriate and just.

## COUNT TWO
## Fraudulent Misrepresentation

293.   Plaintiffs incorporate by reference the preceding allegations of this Complaint as if fully set forth herein.

294.   The Corporate Defendants, Individual Defendants and Fictitious Defendants 1-100 made false representations of material facts to Plaintiffs regarding the VOO program as set forth above.

295.   Plaintiffs relied on the Corporate Defendants, Individual Defendants and Fictitious Defendants 1-100's false representations of material facts regarding the VOO program.

296.   Plaintiffs' reliance on the Corporate Defendants, Individual Defendants and Fictitious Defendants 1-100's false representations of material facts regarding the VOO program was reasonable under the circumstances.

297.   Plaintiffs have been damaged as the proximate result of their reliance on the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100's false representations of material facts regarding the VOO program.

WHEREFORE, Plaintiffs demand judgment against the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100 for compensatory damages and punitive damages, plus interest, costs and all other relief that is appropriate and just.

## COUNT THREE
### Fraudulent Suppression

298.    Plaintiffs incorporate by reference the preceding allegations of this Complaint as if fully set forth herein.

299.    The Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100 had a duty to disclose to Plaintiffs all material facts regarding the VOO program.

300.    The Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100 concealed material facts from Plaintiffs regarding the VOO program.

301.    As the result of the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100's concealment of material facts from Plaintiffs regarding the VOO program, Plaintiffs were induced to sign up for and continue to participate in the VOO program when they could have engaged in other activities and/or opportunities.

302.    Plaintiffs have been damaged as the proximate result of the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100's concealment of material facts regarding the VOO program.

WHEREFORE, Plaintiffs demand judgment against the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100 for compensatory damages and punitive damages, plus interest, costs and all other relief that is appropriate and just.

-81-

## COUNT FOUR
### <u>Conspiracy</u>

303.    Plaintiffs incorporate by reference the preceding allegations of this Complaint as if fully set forth herein.

304.    The Corporate Defendants, the Individual Defendants and the Fictitious Defendants 1-100 have engaged in an illegal and unlawful conspiracy to defraud Plaintiffs, to induce Plaintiffs' participation in the VOO program and to underpay Plaintiffs for services, equipment, materials, repairs and decontaminations related to Plaintiffs' participation in the VOO program.

305.    The acts of the Corporate Defendants, the Individual Defendants and the Fictitious Defendants 1-100 described above constitute the independent wrong of civil conspiracy under the laws of the State of Alabama.

306.    Plaintiffs have been damaged as the result of the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100's illegal and unlawful conspiracy.

WHEREFORE, Plaintiffs demand judgment against the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100 for compensatory damages and punitive damages, plus interest, costs and all other relief that is appropriate and just.

**PLAINTIFFS DEMAND A JURY TRIAL.**

/s/ George W. Finkbohner, III
GEORGE W. FINKBOHNER, III (FIN011)
gwf@cunninghambounds.com
WILLIAM E. BONNER  (BON028)
web@cunninghambounds.com
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, Alabama  36604
251-471-6191
251-479-1031 (fax)


/s/ David A. Bagwell
DAVID A. BAGWELL (BAG003)
david@bagwellesq.com
Post Office Box 2126
Fairhope, Alabama 36533
251-928-2970
251-928-6597


/s/ Samuel N. Crosby
SAMUEL N. CROSBY (CRO028)
snc@sgclaw.com
7133 Stone Drive
Daphne, Alabama 36526
251-626-6696
251-626-2617 (fax)

Attorneys for Plaintiffs


**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AS FOLLOWS:**

**BP AMERICA PRODUCTION COMPANY**
**c/o CT CORPORATION, REGISTERED AGENT**
**2 NORTH JACKSON STREET, SUITE 605**
**MONTGOMERY, ALABAMA  36104**

**PARSONS CORPORATION**
**c/o CT CORPORATION, REGISTERED AGENT**
**818 WEST 7TH STREET**
**LOS ANGELES, CALIFORNIA  90017**

-83-

DANOS & CUROLE STAFFING, L.L.C.
c/o CT CORPORATION, REGISTERED AGENT
2 NORTH JACKSON STREET, SUITE 605
MONTGOMERY, ALABAMA  36104

JASON ZIGLAR
2517 MAGNOLIA GRANDE COURT
MOBILE, ALABAMA  36618-4825

DENNIS BERG
6448 CEDAR BEND COURT, APARTMENT B
MOBILE, ALABAMA  36608

DANNY BLACK
6630 HICKORY HILL DRIVE
SEMMES, ALABAMA  36575

MICHAEL ALLEN
16055 SPACE CENTER BOULEVARD, SUITE 725
HOUSTON, TEXAS  77062

MICHAEL ENGLISH
16055 SPACE CENTER BOULEVARD, SUITE 725
HOUSTON, TEXAS  77062

BRANDY BUXTON
305 NORTH CONCEPTION STREET, APARTMENT 3
MOBILE, ALABAMA  36603

JUSTIN NASH
1944 MEANDER CIRCLE
ANCHORAGE, ALASKA  99516-7312

ED THOMPSON
501 WESTLAKE PARK BOULEVARD
HOUSTON, TEXAS  77079

JOSEPH LOBO
501 WESTLAKE PARK BOULEVARD
HOUSTON, TEXAS  77079

-84-

**PHIL PAYNE**
**7577 EAST OAKLAWN ROAD**
**BILOXI, MISSISSIPPI 39532**

**DEVON DOE**
**16055 SPACE CENTER BOULEVARD, SUITE 725**
**HOUSTON, TEXAS 77062**

**MICHAEL EPPS**
**16055 SPACE CENTER BOULEVARD, SUITE 725**
**HOUSTON, TEXAS 77062**

**TRUDY ROE**
**13083 HIGHWAY 308**
**LAROSE, LOUISIANA 70373**

**JEFF JOHNSON**
**501 WESTLAKE PARK BOULEVARD**
**HOUSTON, TEXAS 77079**

**DARRYL GONZALES**
**16055 SPACE CENTER BOULEVARD, SUITE 725**
**HOUSTON, TEXAS 77062**

**LEIGH A. "LIA" BARNES**
**2086 MESA DRIVE**
**SEMMES, ALABAMA 36575**

**MARSHA DAVIDSON**
**5964 IDLEMOORE COURT**
**THEODORE, ALABAMA 36582**

**CHARLOTTE THOMPSON**
**501 WESTLAKE PARK BOULEVARD**
**HOUSTON, TEXAS 77079**

**DONALD L. "SCOOTER" FREDRICKSON, II**
**15801 MAY TOWER ROAD**
**BAY MINETTE, ALABAMA 36507**

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

RONY EASTRIDGE ET AL        *

                                   *

Plaintiff(s)                      *

vs.                              *     CIVIL ACTION NO. __CV2011-1102__

BP AMERICA PRODUCTION CO ET AL   *     DATE COMPLAINT FILED __11-2-2011__

Defendant(s)

## ASSIGNMENT TO EXPEDIATED CASE MANAGEMENT SYSTEM AND GENERAL PRE-TRIAL ORDER

       This case has been placed on the Expedited Case Management System which is designed to dispose of a case within 12 months after filing.

## OBJECTION TO INCLUSION IN SYSTEM

       If a party to this cause believes that the cause is extremely complex or will involve unique problems and will be impossible to prepare for trial within the time frame of the system, he may, within 40 days after the date of this order, or if the party has not been served at the date of this order, within 40 days after service, file a motion requesting that the cause not be included in the system and that the parties be allowed additional time to prepare the cause for trial. A motion filed later than the aforesaid 40 days will not be considered by the Court. Oral argument may be requested on an exclusion motion. If a cause is excluded from the system by the Court, a discovery schedule will be set by the Court after conference with the parties. If a case is so excluded the general pre-trial portion of this order will remain in effect unless specifically altered by the Court.

## DISCOVERY

       Unless the Court sets a shorter time, all pre-trial discovery shall be completed within 270 days after filing of the complaint unless party filing the Motion to Set and Certificate of Readiness requests an additional period of time, not to exceed 60 days, and certifies that all discovery will be concluded within that time. Notwithstanding the foregoing, for good cause shown, the Court may permit, or the parties may agree, that additional discovery procedures be undertaken anytime prior to trial, so long as such discovery can be completed so as not to require a continuance of the trial setting.

## MOTION TO SET AND CERTIFICATE OF READINESS

       Counsel for the plaintiff shall, and counsel for any other party may, file a Motion to Set and Certificate of Readiness, which shall be filed not later than 270 days after the filing of the complaint. If such a motion is not filed by the 280th day, the Court will place the case marked "To Be Dismissed" on a disposition docket as near as possible to the 300th day and send notice of such to all parties. If a Motion to Set and Certificate of Readiness is not received by the Court prior to the disposition date, the case will be dismissed.

       The Motion to Set and Certificate of Readiness will be in a form similar to that available of in the clerk's office and will contain the following information:

          (1)      The date the complaint was filed;

(2)     That the issues in the case have been defined and joined;

(3)     That all discovery has been completed or will be completed within 60 days after the filing of the Certificate of Readiness;

(4)     That a jury trial has or has not been demanded;

(5)     The expected length of the trial expressed in hours and/or days;

(6)     A brief description of the plaintiff's claim;

(7)     The names, addresses and telephone numbers of the parties or their attorneys responsible for their litigation;

(8)     That the movant certifies that all expert witnesses expected to testify at trial have been disclosed to all parties, together with a summary of their opinions;

(9)     That the movant acknowledges his/her responsibility to make all documents, exhibits, and physical evidence, or copies thereof, expected to be used in the case in chief available to the other parties, not less than 21 days prior to trial, for inspection and copying;

(10)    That the movant certifies that he/she has read the pre-trial order, that he/she has complied with it to date and will comply with its requirements in the future.

The filing by the plaintiff of a Motion to Set and Certificate of Readiness constitutes the voluntary dismissal of all fictitious parties whose true names have not been substituted.

## CONTROVERTING CERTIFICATE

Within 14 days after a Motion to Set and Certificate of Readiness has been filed, counsel for any other party may file a Controverting Certificate specifying the particular statements contained in the Certificate of Readiness to which objection is made, and the reasons therefore. Oral argument may be requested. The Court shall thereupon enter an order placing the case on the Active Calendar either immediately or, where good cause is shown, at a specified later date.

## ACTIVE CALENDAR

Fourteen days after a Motion to Set and Certificate of Readiness is filed, if a Controverting Certificate has not been filed, the case shall be placed on the Active Calendar, unless otherwise ordered by the Court.

## SETTING FOR TRIAL

Unless specifically set by the Court, cases on the Active Calendar shall be set for trial generally in the same order as they came on the Active Calendar and as soon as possible. Preference shall be given to cases which by statute, rule or order of the Court are entitled to priority. Counsel shall be given at least sixty days notice of the trial date.

## DELAY

When a case has been set for trial, no postponement of the trial will be considered by the Court except on a written motion substantially in the form previously approved by the Court. (Obtain from the Court a Request for Delay form.)

**NOTIFICATION OF SETTLEMENT**

In order to provide other litigants with prompt trial settings all attorneys shall notify the Court of settlement, regardless of to status or state of the case (discovery stage, active calendar or trial calendar).

## GENERAL PRE-TRIAL ORDER

To expedite pre-trial and trial procedure, it is ORDERED by the Court that the following will apply:

1.       **EXHIBITS, DOCUMENTS, AND PHYSICAL EVIDENCE, GENERALLY**

a.       Each party shall identify in writing to all other parties and shall make all documents, exhibits and physical evidence, or copies thereof, expected to be used in the case in chief available to the other parties, not less than 21 says prior to trial, for inspection and copying. The same shall then be authenticated and admitted into evidence without further proof, unless written objections to any such documents or exhibits be made to the Court not less than 14 days prior to trial specifying the grounds of objection to the genuineness and relevancy of the proposed document, exhibit, or physical evidence. The requirement does not apply to documents, exhibits and physical evidence used solely as impeachment evidence.

b.       Documents, exhibits or physical evidence not timely exhibited to or made available to other parties prior to trial under this Order will not be admitted into evidence at the trial unless solely for impeachment purposes or unless the ends of justice so require.

c.       Documents, exhibits or physical evidence so admitted hereunder shall be presented to the court reporter for marking in evidence prior to trial.

2.       **DOCTOR, HOSPITAL AND MEDICAL RECORDS**

a.       If applicable, all doctor, medical and hospital bills shall be sent to or made available to all parties not less than 21 days before trial and shall be admitted in evidence as reasonable without further proof, unless written objection to any such bills be made to the Court no less than 14 days before trial specifying the grounds for objection.

b.       Any such bills not timely exhibited to the other parties will not be admitted in evidence at trial unless the ends of justice so require.

c.       The bills so admitted shall be presented to the court reporter for marking in evidence prior to trial.

3.       **DAMAGES**

a.       All parties seeking special damages shall furnish the other parties with a list thereof not less than 21 days before trial. Written objections thereto may be made not less than 14 days before trial specifying the grounds of objections.

b.       Evidence of special damages claimed, but not timely exhibited to other parties, will not be admitted into evidence unless the ends of justice so require.

4.       **AGENCY-TIME AND PLACE-DUTY**

a.       Agency and the time and place of the incident involved, if alleged in the complaint, and, if a negligence case, the existence of a duty, are admitted and the parties are deemed correctly named and designated unless specifically denied by answer or unless written objection is made not less than 14 days before trial. The objections shall include the correct name and entity and/or the grounds relied on.

5.    **EXPERTS**

a.    Unless previously obtained by discovery, each party will furnish to all other parties the names, addresses and qualifications of all expert witnesses expected to testify, together with a brief summary of their opinions. Such disclosure of experts shall be made by the party filing the Motion to Set and Certificate of Readiness not later than the time of filing such motion. Disclosure by all parties shall be made not later than 14 days after the filing of the Motion to Set and Certificate of Readiness.

b.    Disclosure of experts in cases not included in the Fasttrack system shall be made by all parties not less than 60 days before trial.

c.    Unless written objection to the qualifications of an expert is made not later than 30 days before trial, stating grounds, the qualification of such experts will be admitted.

d.    Upon calling an expert to testify at trial, the attorney may state to the Court and jury the name, address and summary of the qualifications of the expert.

6.    **JURY INSTRUCTIONS**

If the case is to be tried by a jury, requested written charges shall be submitted to the Court not later than the close of the plaintiff's case, subject to supplementation during the course of the trial on matters which could not be reasonably anticipated. Each requested charge will be typed on letter sized paper and identified by the party's last name and shall be numbered.

7.    **JURY SELECTION**

Before the commencement of trial, the parties will furnish or advise the court, outside the presence of the jury, the names of all insurance companies involved and any special voir dire questions for the purpose of qualifying the jury.

8.    **DUTY TO SUPPLEMENT DISCOVERY**

All parties are under duty to supplement responses to discovery as provided by Rule 26(e)(3) ARCP which should be done not less than 30 days before trial.

9.    **MOTIONS GENERALLY**

If motion to strike or motion to dismiss a pleading is filed, the Court will not consider such unless a copy of the pleading sought to be struck or dismissed is attached thereto.

10.    **CONFLICTS**

In the event of scheduling conflict affected counsel shall comply with the Attorney Calendar Conflict Resolution Order of the Alabama Supreme Court.

It is further ORDERED by the Court that the Court will reconsider any portion of the General Pre-Trial Order upon timely application by any party.

Done this the _____2_____ day of _____Nov. 2011_____

Charles A. Graddick, Presiding Circuit Judge